**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**              **CASE NO. 18-20771**

**vs.**                                     **HON. ROBERT H. CLELAND**

**TALAL ABBAS**
**Defendant.**
_____/

## DEFENDANT TALAL ABBAS' MOTION FOR DOWNWARD VARIANCE

NOW COMES Defendant, TALAL ABBAS, by and through his attorney, Doraid B. Elder, and hereby moves this Honorable Court to vary from the Sentencing Guideline Range for the reasons set forth in this motion and the accompanying Brief in Support of Motion for Downward Variance:

1. On November 15, 2018 Mr. Abbas was charged with one count of Federal Program Fraud in violation of 18 U.S.C. § 641; and Forfeiture Allegations pursuant to 18 U.S.C. § 981(a)(1)(c) and 28 U.S.C. § 2461.

2. Mr. Abbas appeared before this Honorable Court on April 24, 2019 and pled guilty to the single count of Federal Program Fraud.

3. Mr. Abbas and the government negotiated a Rule 11 plea agreement and jointly concluded that the applicable U.S. Sentencing Guideline Range is 24-30 months based on a total offense level of 17 and a criminal history category of I. This calculation is based on no upward adjustment for role in the offense pursuant to USSG 3B1.1(c). However, Probation has taken the position that there should be a two point addition, resulting in a Total Offense Level 19 and a Guideline Range of 30-37 months.

4. Mr. Abbas filed an objection to the Presentence Investigation Report and the Probation Department responded.

5. There are compelling reasons to grant Mr. Abbas a downward variance from the Guideline Range.

6. Mr. Abbas respectfully requests that this Honorable Court to impose a sentence of 18 months.

7. In accordance with Local Rule 7.1 counsel sought concurrence on this motion on August 29, 2019.

Dated: September 3, 2019                                    Respectfully submitted,

/s/ Doraid B. Elder  
Doraid B. Elder (P57728)  
Attorney for Mr. Abbas  
1360 Porter Street, Suite 200  
Dearborn, MI 48124  
(313) 582-5800  
doraidelderpc@gmail.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**          **CASE NO. 18-20771**

**vs.**                                **HON. ROBERT H. CLELAND**

**TALAL ABBAS**
**Defendant.**
_____/

## DEFENDANT TALAL ABBAS' BRIEF IN SUPPORT OF MOTION FOR DOWNWARD VARIANCE

NOW COMES Defendant, TALAL ABBAS, by and through his attorney, Doraid B. Elder, and states the following in support of his Motion for Downward Variance:

### I. INTRODUCTION

For the reasons outlined below Mr. Abbas respectfully requests that this Honorable Court vary downward from the Guidelines and impose a sentence of 18 months.

### II. GUIDELINE RANGE

Mr. Abbas and the government negotiated a Rule 11 plea agreement and jointly concluded that the applicable U.S. Sentencing Guideline Range is 24-30 months based on a total offense level of 17 and a criminal history category of I. This calculation is based on no upward adjustment for role in the offense pursuant to USSG 3B1.1(c). However, Probation has taken the position that there should be a two point addition, resulting in a Total Offense Level 19 and a Guideline Range of 30-37 months.

3

### III. APPLICATION OF 18 U.S.C. § 3553(a)

In determining the length of a sentence, 18 § U.S.C. 3553(a) requires that any sentence imposed to be "sufficient, but not greater than necessary" to achieve the relevant statutory purposes for sentencing. To ensure this, Congress set forth a series of factors to be considered:

>   (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>   (2) the need for the sentence imposed
>   >   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   >   (B) to afford adequate deterrence to criminal conduct;
>   >   (C) to protect the public from further crimes of the defendant; and
>   >   (D) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment.
>   (3) the kinds of sentence available;
>   (4) the kinds of sentence and the sentencing range;
>   (5) any pertinent policy statement;
>   (6) the need to avoid unwarranted sentencing disparities among defendants;
>   (7) the need to provide restitution to any victims of the offense.

*U.S. v. Duane*, 533 F.3d 450 (6th Cir. 2008). Additionally, § 3553(b) requires that the sentencing court impose a sentence within the guideline range "unless the court finds that there exists an aggravating or mitigating circumstance…that should result in a sentence different from that described". An application of the § 3553(a) factors to this case warrant a downward variance.

A. <u>18 USC § 3553(a)(1): The nature and circumstances of the offense and Mr. Abbas' history and characteristics.</u>

The Court is well versed in the facts of the nature and circumstances of the offense, therefore they do not warrant repetition. Mr. Abbas was born in Deir-Ames, Lebanon on September 17, 1967. Mr. Abbas is the oldest of ten children and recalls having a good, lower-middle class life during his childhood. The family lived in a small village, and for most of Mr. Abbas's childhood his father worked in the United Arab Emirates, coming home only twice a year to see the family. Fortunately Mr. Abbas' father's employment sustained the family financially and Mr. Abbas did

4

not have to work as a child.  He would not have been opposed to it, but his parents wanted him to focus on school, and work was hard enough to come by for adults, let alone children. Mr. Abbas excelled in school; he attended college in Beiruit for a year but could not return for his second year due to financial reasons.  He was also accepted into law school in Lebanon, but could not attend because he could not afford the tuition. Since he could not attend law school Mr. Abbas took classes and obtained his teaching certificate.  He taught at a local village school for seven years before being promoted to vice principal at the local high school, where he served for another six years.

   Mr. Abbas married his wife and the couple had their four children before moving the family to the United States in 2008.  Mr. Abbas' entire family had immigrated prior to him, and although he was leaving a great job that he loved and the village where he grew up, he knew that he wanted to give his children the opportunity to grow up in the U.S.  When Mr. Abbas arrived in the U.S. he quickly realized that his teaching credentials from Lebanon would do him no good here in the U.S.  As a man in his 40s with a high school education and no other skills, his options for employment were limited.  Mr. Abbas found a job working in packaging for Garden Fresh. He was incredibly unhappy in his new life in the U.S., so he decided to return to Lebanon, alone, where he could go back to teaching and send his earnings to his family here.  After just a few months Mr. Abbas realized that he could not earn enough in Lebanon to support himself and his family.  That, coupled with the fact that he missed his wife, kids, and extended family desperately, solidified his decision to return to the U.S.  When he came back he began working part time at a grocery store owned by his parents and operated by his brother (Al-Mona Market). In 2012, just two years later, Mr. Abbas was presented with the opportunity to purchase the store.

5

When Mr. Abbas purchased Al-Mona he had dreams of investing in it and making drastic improvements. The economy was making a comeback from the Recession, but that also produced new competition opening all around him. Within a year of Mr. Abbas purchasing the store, Dearborn Fresh (a major supermarket that caters to the Arab community) opened around the corner; another year after that, Papaya Market opened down the street. Al-Mona had been struggling financially prior to its new competition, and things began to look rapidly more dire. Al-Mona had a steady stream of regular, known, customers, and in order to keep them from shopping elsewhere Mr. Abbas felt he had to offer them something to remain loyal to his store. When a few customers inquired about purchasing non-approved items with their WIC or SNAP benefits, Mr. Abbas reluctantly agreed. He knew that if he said no they would leave and shop down the street. It was against his better judgment and was a terribly difficult decision. He began doing it only for well-known customers. Then it grew to their family and friends. Then, seemingly out of nowhere, people would start coming to Al-Mona with their friends, and the custom began to snowball beyond Mr. Abbas' control. In 2014 Mr. Abbas tried to sell the business, but he could not find a buyer. The demand for government benefit exchanges became greater and greater. Mr. Abbas tried again to sell the business. He found a buyer, but the deal fell through at the last minute. It was at this point that he knew he had to close the business and get out. At the time he was charged in this case he was in the process of closing down and had very little inventory left. He also informed his landlord that he would not be renewing his lease. Mr. Abbas does not offer this as an excuse for his behavior. He has accepted responsibility for his violation of the law and will continue to do so. He does, however, offer this to the Court as an explanation as to how it began and how it grew beyond his control so quickly. This is not a case where he was a mastermind or ringleader of a large operation. This is a small family owned

and operated store that served its customers as best it could considering the economic and financial situation it was in.

Until his oldest son recently became employed, Mr. Abbas was the sole provider for his family. His wife has never been employed outside the home and has no marketable job skills. His oldest daughter is currently enrolled in college at Madonna university and his two youngest children are in school. This family is going to be severely impacted by Mr. Abbas's incarceration. Reduction of the destructive effects that incarceration of a defendant may have on innocent third parties is among the permissible justifications for a downward variance. *U.S. v. Milikowsky*, 65 F.3d. 4 (2nd Cir. 1995) The Third Circuit Court of Appeals held that the sentencing court erred in holding that it could not issue a sentence below the guidelines for a defendant who resided with her elderly parents, who were physically and financially dependent on her, where her father had undergone brain surgery and suffered a heart attack. *U.S. v. Dominguez*, 296 F.3d. 192 (3rd Cir. 2002) See also *U.S. v. Milne,* 384 F.Supp.2d 1309 (E.D. Wis. 2005) (below guideline sentence because the defendant was the sole supporter of a large family and "a long period of imprisonment would have a very harsh effect on defendant's dependents").

Mr. Abbas respectfully asks the Court to consider his otherwise excellent character, work ethic and otherwise law-abiding life, as also supported by his Sentencing Memorandum and attached exhibits, when considering a downward variance. See *U.S. v. Autery*, 555 F. 3d 864 (9th Cir. 2009) (defendant's guidelines 41-51 months; court's sua sponte variance to probation was not unreasonable in part because of the defendant's positive characteristics "such as having no history of substance abuse, no interpersonal instability, no sociopathic or criminalistic [sic] attitude, his motivation and intelligence, and the support of his wife and child…These

characteristics undoubtedly constitute 'history and characteristics of the defendant' that justify a variance below the guidelines".) Mr. Abbas displays all of the history and characteristics recognized by the court in *Autry* and asks that this Court also impose a variance below the guidelines.

B. 18 USC § 3553(a)(2)(A): The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

Mr. Abbas' immediate cooperation and guilty plea demonstrate his acceptance of responsibility for his role in the offenses that bring him before this Honorable Court. He understands that the crimes he was charged with, and ultimately pled guilty to, are serious offenses that had consequences far beyond those that have impacted him directly. Mr. Abbas comes before this Court prepared to accept the consequences of his actions, however a sentence including a downward variance would still accomplish the goals of 18 USC § 3553(a)(2)(A).

Mr. Abbas' respect for the law has been demonstrated during his supervision by pretrial services. He has been under the Court's supervision since November 2018 and has exhibited excellent behavior. Courts have recognized that a defendant's behavior while under the supervision of pretrial services can show the likelihood of reoffense. See *U.S. v. Munoz-Nava*, 524 F.3d 1137 (10th Cir. 2008).

C. 18 USC § 3553(a)(2)(B): The need for the sentence imposed to afford adequate deterrence to criminal conduct.

This case is Mr. Abbas' only contact with the criminal justice system. Although the guidelines take into account his lack of criminal history, sentencing courts may also consider this factor when determining a sentence. In *U.S. v. Tomko*, 562 F.3d 558 (3rd Cir. 2009) the defendant was convicted of tax evasion of $225,000; the court deviated from the guideline range

of 12-18 and imposed a sentence of probation on the condition of one year home detention and a fine, due to the defendant's minimal criminal record. See also *U.S. v. Paul*, 561 F. 3d 970 (9th Cir. 2009) (Defendant convicted of embezzlement and Guidelines 10-16 months; court's within guideline sentence of 15 months was unreasonably high because he was a first time offender with no criminal record whatsoever) and *U.S. v. Huckins*, 529 F. 3d 1312 (10th Cir. 2008) (Guidelines 78-97 month; court's variance to 24 months was proper in part because it was the defendant's first conviction). Mr. Abbas had never seen the inside of a courtroom until his involvement in this case.

In addition to his lack of criminal record, Mr. Abbas is not a risk for recidivism due to his age (52). Many courts have recognized the fact that older defendants pose a much lower risk of committing another crime and therefore vary downward from the Sentencing Guidelines. In *U.S. v. Bariek*, 2005 WL 2334682 (E.D. Va. Sept. 23, 2005) the guideline range was 37- 46 months; the offense was defendant's first, and like Mr. Abbas, he arrived in the United States early in his life, obtained citizenship, maintained stable employment, supported his family and became a well-respected member of his community. The judge stated that there was no indication that Mr. Bariek posed a recidivism risk and that there was no compelling need for rehabilitation that would be served by a lengthy term of incarceration. The same can be said for Mr. Abbas. See also *U.S. v. Hanson*, 561 F. Supp.2d 1004 (E.D. Wisc. 2008) (child pornography case where guidelines were 210-262 months; the court imposed a sentence of 72 months in part because the defendant was 49 years old, had no prior record and had never been to jail in his life); *U.S. v. Ward*, 814 F. Supp. 23 (E.D.Va. 1993) (departure case; departure warranted because guidelines fail to consider the length of time the defendant has refrained from the commission of his first crime; defendant was 49 years old). Defendants "over the age of forty…exhibit markedly lower

rates of recidivism in comparison to younger defendants" and that "[r]ecidivism rates decline relatively consistently as age increases" from 35.5% under age twenty one to only 9.5% over age fifty. See *Measuring Recidivism: The Criminal History Computation of The Federal Sentencing Guidelines*, at 12, 28 (2004) www.ussc.gov/publicat/Recidivism_General.pdf. Courts have also acknowledged that a felony conviction can often have the same impact on a defendant as a life sentence, due to the limits on education and employment. See *U.S. v. Smith*, 682 F.2d 1236 (9th Cir. 1982). Knowing that the events that bring him before this Court have ruined everything he has worked for and will have an unbelievable impact on his family, Mr. Abbas will never make the same choices again.

In addition to his lack of criminal history, the length of time until his first conviction and his age, the Court should consider varying below the Guidelines because any sentence of imprisonment will be devastating to Mr. Abbas and will affect him for the rest of his life. In *U.S. v. Baker*, 445 F. 3d 987 (7th Cir. 2006) the Court of Appeals affirmed a below guideline sentence of 78 months (guidelines called for 108) noting that "significant is the district court's finding that a prison term would mean more to Mr. Baker than to a defendant who previously had been imprisoned. Consideration of this factor is consistent with § 3553's directive that the sentence reflect the need for 'just punishment' §3553(a)(2)(A) and 'adequate deterrence' § 3553(a)(2)(B)". See also *U.S. v. Willis*, 479 F.Supp.2d 927 (E.D. Wisc. 2007) (sentence of one year and one day in drug case with guidelines of 120 months was sufficient in part because the sentence "provided a substantial punishment for someone like defendant, who had never before been to jail" and *U.S. v. McGee*, 479 F.Supp.2d 910 (E.D. Wisc. 2007) ("generally a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who had already served some serious time

10

yet continues to reoffend"). The instant offense is the result of unfortunate decisions by Mr. Abbas but is not an indication of any kind of criminal career. At his age the chance of him repeating the same terrible decision is nil. Perhaps more importantly, Mr. Abbas closed the store and found other employment (working at a local bakery) to support his family. He is neither a criminal mastermind nor a risk for recidivism.

D. 18 USC § 3553(a)(2)(C): The need for the sentence imposed to protect the public from further crimes of the defendant

Mr. Abbas poses no threat to the public. In *U.S. v. Hein*, 463 F.Supp2d 940 (E.D. Wisc. 2006) the sentencing court departed from the guideline term of 12-18 months to a non-custodial sentence because the defendant was unlikely to re-offend and posed no danger to the public, due to his minimal prior record and law abiding life. See also *U.S. v. Edwards*, 595 F.3d 1004 (9th Cir. 2010), where defendant was convicted of bankruptcy fraud and received a sentence of seven months probation because it satisfied any deterrent and punitive purposes; *U.S. v. Baker*, 502 F.3d 465 (6th Cir. 2007), where departure from guidelines of 27-33 to probationary sentence was appropriate because incarceration was not necessary to protect the public. Mr. Abbas acknowledges his role in this offense, however he is not a threat to the public.

E. 18 USC § 3553(a)(2)(D): The need for the sentence imposed to provide the defendant with needed education or vocational training, medical care, or other correctional treatment

The sentence imposed by the Court does not necessitate any sort of educational or vocational training.

F. 18 USC § 3553(a)(3) and (4): The kinds of sentences available and the sentencing range available

11

Mr. Abbas and the government concur, pursuant to the Rule 11 Plea Agreement, that the advisory guideline range is 24-30 months. The Probation Department has calculated the guideline range to be 30-37 months.  There is no statutory mandatory minimum, therefore the Court may impose any sentence it deems appropriate.

G. <u>18 USC § 3553(a)(5): Any pertinent policy statement</u>

There does not appear to be any pertinent policy statement that would have an effect on Mr. Abbas' sentence.

H. <u>18 USC § 3553(a)(6): The need to avoid unwarranted sentencing disparities among defendants</u>

Mr. Abbas does not have any co-defendants.  A sentence of 18 months would not produce unwarranted disparities between Mr. Abbas and another defendant who is similarly situated to him.

I. <u>18 USC § 3553(a)(7): The need to provide restitution to victims</u>

The People of the United States of America would bbenefit by Mr. Abbas being sentenced to an 18 month term of incarceration, below the guideline range, so that he may find employment and begin working on repayment of his restitution.

## IV. CONCLUSION

A downward variance from the Guideline Range will achieve the goals of § 3553(a) and the body case law that has developed in recent years.  Mr. Abbas respectfully asks this Honorable Court to consider his personal characteristics and history, the impact incarceration will have on his family, the small window in which the activity took place, his incredibly low likelihood of

recidivism, and all of the other factors mentioned above and also outlined in his Sentencing Memorandum, and sentence him to a term of 18 months.

Dated: September 3, 2019                                    Respectfully submitted,

                                                      <u>/s/ Doraid B. Elder</u>
                                                     Doraid B. Elder (P57728)
                                                     Attorney for Mr. Abbas
                                                     1360 Porter Street, Suite 200
                                                     Dearborn, MI 48124
                                                     (313) 582-5800
                                                     doraidelderpc@gmail.com